IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LUIS E. RIVERA ROSARIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-616-GMS |
| | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

**I.   INTRODUCTION**

This case comes from the denial of Luis E. Rivera Rosario's ("Rosario") claim for Social Security disability benefits. On September 14, 2004, Rosario applied for Disability Insurance Benefits ("DIB"). (Tr. at 19.) Rosario alleged disability as of August 22, 2004, due to a broken foot and injured right hand. (Tr. at 72.) After Rosario's application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 38-41, 43-49.) On October 25, 2005, Rosario, who was represented by counsel, and a vocational expert ("VE") testified before the ALJ. (Tr. at 199-229.) Following the hearing, on December 6, 2005, the ALJ issued a written opinion determining that Rosario, despite his physical impairments, could perform a range of sedentary work and, thus, is not disabled within the meaning of the Social Security Act (the "Act"). (Tr. at 19-26.) Rosario subsequently requested a review of the ALJ's decision by the Appeals Council, who denied Rosario's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. at 5-7.)

Following the Appeals Council's request of the ALJ's decision, on October 2, 2006, Rosario filed a timely appeal with this court. (D.I. 2.) Currently before the court are the parties' cross-motions for summary judgment. Because the court finds that the ALJ's decision is supported by substantial evidence, it will deny the plaintiff's motion and grant the defendant's motion.

## II. BACKGROUND

Rosario was born on August 8, 1959, and has a high school education. (Tr. at 79, 202-203.) His past work experience includes employment as a laborer for maintenance of a golf course. (Tr. at 203.) On or about August 22, 2004, Rosario was involved in a serious motor vehicle accident in Puerto Rico, which resulted in neck, right and left ankle, and right hand injuries. (Tr. at 109, 145-46.) He underwent an Open Reduction Internal Fixation ("ORIF")[1] in Puerto Rico. (Tr. at 111.) Subsequently, upon his return to the United States, Rosario filed for DIB on September 14, 2004, alleging disability beginning August 22, 2004, due to a right talus neck fracture with tibio-talar dislocation and injury to the right hand sustained in the automobile accident. (Tr. at 65, 72.)

### A. Medical Evidence

Since Rosario contests only the ALJ's decision with respect to his right ankle impairment, the court will limit the discussion of the medical evidence to this impairment.

On August 24, 2004, Rosario was admitted to the Puerto Rico Medical Center where Pedro J. Reyes, M.D. ("Dr. Reyes"), an orthopedic surgeon, diagnosed fractures of the right talus and medial malleoulus. (Tr. at 110.) Dr. Reyes performed an ORIF of the right ankle with no complications. (Tr. at 110-11.) Thereafter, in September and October 2004, Dr. Reyes opined

---

[1] Open Reduction Internal Fixation ("ORIF") is a method of surgically repairing a fractured bone. Generally, this involves either the use of plates and screws or an intramedullary (IM) rod to stabilize the bone. Jonathan Cluett, M.D.: O.R.I.F., http://orthopedics.about.com/cs/brokenbones/g/orif.htm (last visited July 18, 2008).

2

that the wound at the right ankle was clean and dry and prescribed Rosario Ultracet for pain. (Tr. at 107-08.) Dr. Reyes recommended physical therapy with instructions to use crutches and to place no weight on the right ankle. (Tr. at 107-08.)

Upon his return to the United States on January 7, 2005, Rosario visited Mahammad Kamali, M.D. ("Dr. Kamali"), an orthopedic surgeon, who scheduled three weeks of physical therapy after observing moderate equinus[2] and some varus deformity[3] in the right foot and ankle. (Tr. at 161.) On February 11, 2005, based on improved range of motion, less equinus, and almost completely corrected varus deformity, Dr. Kamali extended Rosario's physical therapy. (Tr. at 160.) On March 22, 2005, after reviewing the medical evidence related to Rosario's disability, Charles Segal, M.D. ("Dr. Segal"), a state agency physician opined that Rosario's impairments did not meet a disability listing and he could perform a range of light work. (Tr. at 170-77, 71-74.)

On March 25, 2005, with "some improvement" and a report of some swelling of the right ankle only after standing "a lot," Rosario was discharged from his physical therapy after he reached his maximum performance. (Tr. at 179.) Dr. Kamali stated, with the exception of avascular necrosis,[4] that his x-ray of Rosario's right ankle was unremarkable, because he observed improved range of motion and only mild varus deformity. (Tr. at 163, 179.) Dr. Kamali recommended exercises at home and prescribed Relafen, a nonsteroidal anti-inflammatory drug. (Tr. at 179.) On April 15, 2005, Rosario reported right ankle pain and sleeping difficulties for which Dr. Kamali prescribed Vicodin, a narcotic analgesic. (Tr. at 180.) After noting that Rosario's range of motion was the same as the previous session but improved since the first

---

[2] Equinus is a deformity in which the foot is planar flexed, causing the person to walk on the toes without touching the heel. Dorland's Medical Dictionary, 614, 1787 (29th ed. 2000).
[3] A varus deformity is the angulation of a bone toward the midline of the body. Dorland's, at 1934.
[4] Avascular necrosis is when tissue becomes a dry and opaque mass containing the outlines of denucleated cells. Dorland's, at 1181.

session, Dr. Kamali recommended that he "walk bearing weight on the leg to improve his mobility." (Tr. at 180.) On June 29, 2005, Rosario complained about some swelling of the right ankle for which Dr. Kamali observed improved range of motion with x-rays of the right ankle showing satisfactory healing of the fracture and no signs of avascular necrosis. (Tr. at 181.) Dr. Kamali recommended continuing with the home exercises and that Rosario did not need to return for six months. (Id.)

### B.    Hearing Testimony

#### 1.    Rosario's Testimony

At the hearing before the ALJ, Rosario testified that he has trouble walking because he has right leg and ankle pain with swelling on a daily basis. (Tr. at 207-08.) Additionally, he could only stand using a cane for approximately forty-five minutes and walking caused swelling for which he took three Ultracets per day. (Tr. at 209, 214, 216.) Once in a while Rosario walks to the bathroom, but does no cooking, cleaning, shopping or driving. (Tr. at 209.) Although he can walk slowly to the corner store with the assistance of a cane, when he sits in a chair, he must elevate his foot to avoid pain. (Id.) Despite these symptoms, Rosario did admit that he could lift thirty pounds while seated. (Tr. at 214.)

#### 2.    Vocational Expert Testimony

At the same hearing before the ALJ, a Vocational Expert (the "VE") testified that given all the limitations of Rosario's injury, an individual with such limitations would be able to perform sedentary and unskilled work as a machine tender, inspector/tester, or packer. (Tr. at 218.) Further, VE testified that these jobs exist in significant numbers in the national and regional economy. (Tr. at 218-19.)

### C. The ALJ's Findings

Based on the medical evidence and the testimony of the VE and other witnesses, the ALJ determined that Rosario was not disabled within the meaning of the Act. (Tr. at 21-22.) Specifically, the ALJ found that the medical evidence indicated that Rosario retained the ability to perform sedentary work in a seated position that had limited pushing/pulling, permitted the use of a cane for ambulation, and required no prolonged climbing, balancing, or stooping. (Tr. at 22-24, Finding No. 5.) Although the ALJ determined that Rosario's work-related limitations prevented him from returning to his past employment, the ALJ did find that Rosario could perform other work such as machine tender, inspector/tester, and packer, based on Rosario's age, education, work experience, and the VE's testimony. (Tr. at 24-25.) Based upon this evidence, the ALJ determined that Rosario was capable of successfully adjusting to work that existed in large numbers in the national economy and concluded that Rosario was "not disabled" pursuant to the Social Security Act. (Tr. at 25, Finding No. 11.)

## III. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refrain from] weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). If the court is able to determine that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law, summary judgment is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 25 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

### B. Review of ALJ's Findings

The court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

Credibility determinations are the province of the ALJ, and should only be disturbed on review if not supported by substantial evidence. *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Sec. of the Dep't of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

### IV. DISCUSSION

The crux of Rosario's attack on the ALJ's decision is that the ALJ failed to properly evaluate the evidence, in that the ALJ gave proper weight to some evidence, and placed too much

weight on other evidence. (D.I. 12.) Specifically, Rosario argues that the ALJ made significant errors concerning the record, which render it unsupported by substantial evidence. (D.I. 12.) But, after considering all of the medical opinions and other relevant evidence in the record, the court agrees with the ALJ's finding that "the record shows no evidence that the claimant is currently receiving any medical treatment for his ankle" and that "no treating or examining source stated that the claimant's impairments were totally debilitating or rendered the claimant completely unemployable." (Tr. at 23.) On February 11, 2005, Dr. Kamali reported that Rosario had impairments, but noted that they were improving over time and told him he should walk to increase his mobility. (Id.) On November 10, 2005, Dr. Kamali reported that Rosario was able to use a cane or crutches for ambulation. (Id.)

     Further, the court agrees with the ALJ in not giving controlling weight to Dr. Kamali's assessment of Rosario's impairment for DIB, because Dr. Kamali did not provide a substantive analysis of Rosario's symptoms or work-related limitations, but instead merely provided conclusory opinions that Rosario met a listing and that Rosario was unable to work. (Tr. at 24, 180, 192.) Dr. Kamali's assessment would be entitled to controlling weight if his medical opinion was (1) supported by clinical and laboratory medical findings and (2) was not inconsistent with other substantial evidence in the record. 20 C.F.R. 404.1527(d)(2). Here, in support of the ALJ's decision to not give controlling weight to Dr. Kamali's assessment, the ALJ noted (1) that the x-rays of the right ankle "showed satisfactory healing of the fracture" and found "no signs of avascular necrosis," (2) that the physical examinations showed constant overall improvement and improved range of motion (only 10 degrees from full range of motion), and (3) that there was no evidence of significant active treatment or significant medicinal changes that would suggest an

uncontrolled condition. (Tr. at 23, 163, 179, 181.) Further, the ALJ noted that Dr. Kamali's conclusory opinions were inconsistent with the laboratory and clinical findings, and were more consistent with Dr. Segal's opinion that Rosario could perform light sedimentary work. With respect to this argument, the court concludes that the ALJ's findings are supported by substantial evidence, because although they do suggest work-related limitations, they are inconsistent with a disabling impairment.

Further, Rosario argues that the ALJ improperly found that he did not meet §1.02, §1.03 or §1.06 in the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (D.I. 12.) Specifically, with respect to §1.02 and §1.03, Rosario argues that the ALJ improperly concluded that "there is no evidence in the record that the claimant's fracture has failed to form a solid union or that he has the inability to ambulate effectively." (D.I. 12 at 11.) With respect to §1.06, Rosario did not contest the ALJ's determination that his ankle did not meet §1.06 for a fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. (Id.) To satisfy §1.02, an impairment must cause loss of function due to an anatomical deformity and chronic joint pain and stiffness with a limitation of motion or other abnormal motion involving one of the major peripheral weight-bearing joints, resulting in inability to ambulate effectively. (Tr. at 22.) To satisfy §1.03, there must be reconstructive surgery or surgical arthrodesis of a major weight bearing joint with the expectation that the claimant will not be able to effectively ambulate within twelve months of onset. (Tr. at 22.) Thus, in order to be considered eligible for §1.02 and §1.03 (or §1.06), Rosario must, among other things, prove that he is unable to ambulate effectively.[5] Here, the ALJ determined that Rosario could ambulate effectively, because Dr. Kamali's notes stated that Rosario could walk

---

[5] Examples of an inability to ambulate effectively include the inability to walk without the use of a walker, two crutches or two canes; to use standard public transportation; or to carry out routine daily activities, such as shopping. 20 C.F.R. pt. 404, subpt. P, app. 1, §1.00 (B) (2) (b) (2).

8

with crutches, with a walker, and with one only cane. (Tr. at 22, 160, 179-181.) Further, the ALJ noted that Dr. Kamali recommended to Rosario, after his physical therapy, to put some weight on the leg. (Tr. at 22, 160, 180.) Additionally, Rosario reported in his daily activities questionnaires on December 20, 2004 and February 15, 2005 that he is able to take care of his personal hygiene and dress, count change, handle a savings account, use a checkbook and money orders, follow written and spoken instructions, exercise by walking in his apartment, watch television, draw, do puzzles, walk to the corner with crutches, play cards, and lift thirty pounds with his left hand. (Tr. at 23.) These treatment notes show some walking difficulties, but they do not demonstrate to the court an "extreme limitation of the ability to walk." 20 C.F.R. pt. 404, subpt. P, app. 1, §1.00 (B) (2) (b) (1). Thus, though finding that these ailments were "severe" within the meaning of 20 C.F.R. 404.1520(c), the ALJ concluded that these impairments do not meet one of the listed impairments. The court agrees and concludes that this finding is supported by substantial record evidence.

      Accordingly, the court is not persuaded that it should disturb the ALJ's decision and for the reasons noted above, the court will uphold the ALJ's decision and grant the defendant's motion for summary judgment.

Dated: July 30, 2008                        /s/ Gregory M. Sleet
                                                 CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LUIS E. RIVERA ROSARIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-616-GMS |
| | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

1. The plaintiff's motion for summary judgment (D.I. 11) is DENIED.

2. The defendant's motion for summary judgment (D.I. 14) is GRANTED.

3. The Clerk of Court is directed to close this case.


Dated: July 30, 2008                /s/ Gregory M. Sleet
                                    CHIEF, UNITED STATES DISTRICT JUDGE